### NICOLL *v.* SANDS *et al.*

(*Supreme Court, General Term, Second Department.*     May 11, 1891.)

WATER COMPANIES—CONTRACT WITH TOWN—CONSTRUCTION.

Laws N. Y. 1889, c. 369, § 5, provides, with respect to water companies, "that it shall be the duty of such corporations * * * to contract with the authorities * * * of any town or village through which the conduits or mains of such corporations may pass * * * to supply any of such inhabitants or authorities with pure and wholesome water." Under said statute, a water company contracted with the authorities of a town to lay in its streets pipes "for the purpose of supplying the town and its inhabitants with pure and wholesome water." The contract did not provide, in express terms, that said company should furnish water, but there was a provision that it should erect and operate "two pumps, of standard manufacture, of appropriate size, each having a capacity of pumping one million gallons in every twenty-four hours." *Held,* that said contract should be construed as one to furnish a supply of water, and not as one for the erection of works merely.

Appeal from special term, Suffolk county.

Action by William Nicoll, a resident tax-payer of the town of Islip, against Charles G. Sands and others, under the "Tilden Act," to set aside a contract made between the authorities of said town and the Great South Bay Water Company, and to enjoin the supervisors of Suffolk county from levying a tax for the purpose of enabling said town to fulfill its obligations under said con-

tract, upon the ground (1) that said contract did not provide for the delivery of water by said company, and (2) that said contract was fraudulent and void in respect of certain compensation to be paid the highway commissioners for official services. The petition of the company to the town authorities was for a privilege to supply the inhabitants and authorities with pure and wholesome water, and to provide for and insure the delivery by the said company of water, through hydrants or otherwise, for the extinguishment of fires, and for sanitary and other purposes. It was drawn under Laws N. Y. 1889, c. 369, § 5, which provides, in regard to water companies, "that it shall be the duty of such corporations * * * to contract with the authorities * * * of any town or village through which the conduits or mains of such corporations may pass * * * to supply any of such inhabitants or authorities with pure and wholesome water. * * * Such authorities * * * shall have the power, and they are hereby authorized and empowered, to so contract in the name and on behalf of the town * * * for the delivery by such company of water, through hydrants or otherwise, for the extinguishment of fires, and for sanitary and other public purposes." Said contract provided "that the party of the first part hereby covenants and agrees to erect water-works, and lay in the principal streets of said town 23 miles of pipe, * * * for the purpose of supplying the town and its inhabitants with pure and wholesome water, in accordance with the grant of right of way to lay pipes," etc., "and to erect 200 fire hydrants," etc. The contract sets out at length the manner in which the work thereunder should be performed as to laying pipes, erection of hydrants, gates, valves, etc.; "the same [hydrants] to be used for the extinguishment of fires only, and all reasonable exhibitions and practice by the fire departments." "There shall be erected and operated two pumps of standard manufacture of appropriate size, each having a capacity of pumping one million gallons in every twenty-four hours,"—but it nowhere contained an agreement in express terms to supply the town with water. The opinion of the judge at special term, referred to in the opinion of PRATT, J., below, was as follows: "CULLEN, J. Although the contract between the town and water company is inartificially drawn, I am clear, after a careful study of its provisions, that it is to be construed as a contract to furnish a supply of water, not as one for the erection of works merely. There are many provisions which show that it was contemplated that the company should furnish water, but there is one that, in my opinion, imperatively makes it the duty of the company so to do: 'Pumps. There shall be erected and operated two pumps of appropriate size, each having a capacity of pumping one million gallons in every twenty-four hours.' This agreement to operate the pumps is an agreement to deliver two millions of gallons every twenty-four hours. That the agreement does not provide for the delivery of water for other purposes than fire does not render it invalid. The statute authorizes the town authorities to contract for other purposes, but it is not obligatory on the town to do so. They may contract for any or all the purposes prescribed in the statute. The other questions raised were disposed of on the trial." The plaintiff appeals from a judgment in favor of the defendants.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Joseph Wood,* (*George A. Black,* of counsel,) for appellant. *Timothy M. Griffing,* for respondent Great South Bay Water Company. *Wilmot W. Smith,* for respondents Brown and L'Hommedieu. *Herbert W. Smith,* for respondent Smith. *Harry G. Clock,* for respondent Jones.

PRATT, J. We concur in the views of the learned trial judge, who at trial term substantially held that, notwithstanding all inaccuracies, the agreement in question, taken as a whole, indicated the purpose of the contracting parties, namely, to supply water to the town in specified quantities through pipes and other means to be provided by the company for the lawful use mentioned

in the statute under which the company was organized. It has been found that the agreement was made in good faith; in other words, that there was no fraud in the transaction. We think this conclusion was clearly sustained by the evidence. Not only so, but that a finding of fraud would have been against the clear weight of evidence. The terms of the agreement were all agreed upon before the question of commissioners' compensation was mentioned. Under these circumstances, it becomes quite unnecessary to decide the question of the legality of the rate of compensation which was ultimately agreed on. It is obvious that the officers, in negotiating the terms of the agreement, could not have been influenced by the matter of their fees. We find no other question which seems to require attention. We therefore affirm the judgment, with costs.